**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
GOOD OLD GOLD, INC., a New York
Corporation,

        Plaintiff,

v.

JONATHAN WEINGARTEN, an individual,
and AUGUST VINTAGE INCORPORATED,
a New York corporation,

        Defendants.
----------------------------------------------------------X

Civil Action No.:

**COMPLAINT**

Trial by Jury Demanded
and Injunctive Relief

      COMES NOW, Plaintiff, GOOD OLD GOLD, INC., by and through its undersigned attorneys and hereby sues JONATHAN WEINGARTEN and AUGUST VINTAGE INCORPORATED, and states as follows:

### JURISDICTION

      1.    This Court has jurisdiction as the claims alleged herein arise under Federal Statutes 28 U.S.C. §1331; 28 U.S.C. §1338; Defend Trade Secrets Act, 18 U.S.C. §1836; Lanham Act, 15 U.S.C. §1125(a), §1114(1), §1120 and supplemental and pendant jurisdiction under 28 U.S.C. §1367 over all related claims.

### VENUE

      2.    Venue is proper pursuant to 28 U.S.C. 1391(b) in the United States District Court for the Eastern District of New York, as Plaintiff and both Defendants reside and do business in Nassau County, New York, and it is where infringement and a substantial part of the relevant events have occurred.

**THE PARTIES**

3.     Plaintiff, GOOD OLD GOLD, INC. (hereinafter "Company" or "GOOD OLD GOLD"), is a New York corporation doing business at all material times in Nassau County, New York and throughout the United States, with its principal office located in Nassau County, at 5278 Sunrise Highway, Massapequa Park, New York 11762.

4.     Defendant, JONATHAN WEINGARTEN (hereinafter referred to as "J. WEINGARTEN", is an individual, over the age of 18, *sui juris*, and residing at 2945 Ewell Place, Wantagh, New York 11793, and at all material times doing business in Nassau County, New York.

5.     Defendant, AUGUST VINTAGE INCORPORATED (hereinafter referred to as "AVI"), is a New York corporation filed with the Secretary of State of New York, DOS ID Number 4764499, on May 27, 2015, at 2945 Ewell Place, Wantagh, New York 11793, and doing business at all material times in Nassau County, New York.  (Defendant, J. WEINGARTEN, and Defendant, AVI, are collectively referred to as "Defendants.")

**BACKGROUND**

6.     Plaintiff, GOOD OLD GOLD, is a jewelry and diamond store in Nassau County, New York, that employs over twenty employees serving the public with a wide selection of fine jewelry and diamonds.  The Company was started over thirty years ago by John Weingarten and his wife, Helen Weingarten.  It grew as a family business and finally arrived at its present location in Nassau County some twenty-five years ago.  *See* Exhibit A**.**

7.     The Company prides itself in providing quality jewelry and diamonds at a fair and reasonable price.  Taking such an approach, GOOD OLD GOLD developed and earned a

reputation for reliability, veracity and fidelity, and a consumer knowing little about jewelry and diamonds could place their trust in the advice given by the Company.

8.      As the Company grew, in 2000 it incorporated in New York State under the name GOOD OLD GOLD, INC., and after the death of John Weingarten the Company was owned by Helen Weingarten and her three children, one of which is her son, Defendant, J. WEINGARTEN.

9.      The Company decided in 1998 that it wanted to promote its business through a presence on-line, particularly in the diamond area.  The person assigned the responsibility to create marketing, new products and innovation in the on-line diamond portion of the business was J. WEINGARTEN.

10.     Defendant, J. WEINGARTEN, became a manager and the executive in charge of the on-line diamond portion of the business.  With an education in diamonds, he created and recorded, on behalf of GOOD OLD GOLD, hundreds of videos which were loaded up to the Good Old Gold YouTube channel and website (hereinafter collectively referred to as the "website") as part of the marketing plan of Good Old Gold to educate the public on diamond buying.

11.     The GOOD OLD GOLD website became one of the largest instructional and educational websites with regard to the knowledge and things a consumer should know when purchasing a diamond or diamond jewelry.

12.     In the diamond business, many transactions and consignments of diamonds between vendors within the business are done informally by handwritten receipts, although the value of the diamonds may be considerable.  These business transactions are based upon reputation.

13.     The reputation for trust and veracity built by GOOD OLD GOLD permitted it to expand to participate in such business allowing the Company to become a significant firm in the diamond business both locally and throughout the United States.  Part of that expansion was the use of the trademark AUGUST VINTAGE (the "Mark") for one of its lines of diamonds.  *See* composite, Exhibit B.

14.     GOOD OLD GOLD claims that the trademark, AUGUST VINTAGE, is owned by it and that the registration of the Mark with the United States Patent and Trademark Office (hereinafter the "USPTO") was improperly put into J. WEINGARTEN's name.  Further, that patents which were supposed to be assigned to GOOD OLD GOLD weren't, although implied and represented by J. WEINGARTEN that they would be so assigned.  The trade secret information of customer contact information, purchase history, financial information, website subscribers and vendor information of GOOD OLD GOLD collected and complied over 20 years have been, without authority and in breach of his duty, improperly taken and used by J. WEINGARTEN to start a new business (Defendant AVI), directly competing with GOOD OLD GOLD.

15.     Based upon these events and the facts, Plaintiff pleads causes of action one to nine against the Defendants, and any other cause of action brought pursuant to or which can be inferred from the facts as set forth herein.

## THE FACTS

16.     Plaintiff is in the jewelry and diamond business having a retail store and on-line through its website, www.goodoldgold.com.  The Company having decided in the late 1990's to concentrate its efforts in the on-line diamond business, assigned the responsibility and task of developing, marketing, creating new product and innovation to one of its shareholders, J.

WEINGARTEN, who was to manage and be the executive in charge of accomplishing these tasks and goals.

17.    In the first few years of its on-line diamond business, the Company through the efforts of Defendant, J. WEINGARTEN, produced hundreds of videos for GOOD OLD GOLD, regarding the nature of diamonds, what consumers should know about diamonds, how to select diamonds and various educational materials regarding diamonds, as well as showcasing diamonds being sold by the Company.  These videos and other marketing activity made GOOD OLD GOLD, with its reputation of trust and veracity, a material presence in the on-line diamond business.

18.    In approximately 2008, the Company was advised by its executive, J. WEINGARTEN, that he had an idea for a new diamond cut.  The Company decided to support and encourage this effort which was presented and perceived as a Company opportunity.   J. WEINGARTEN was provided and utilized Company resources, Company time and money to pursue these efforts.

19.    It was decided by the Company to call the new selection of diamonds by the trademark name, AUGUST VINTAGE, which would include the new cut diamond.   The Company, in June 2009, initiated using the trademark AUGUST VINTAGE by selling diamonds under that Mark on its website and within its retail store.  J. WEINGARTEN, as the executive fully in charge of handling the new brand, was charged with the responsibility of registration of the new mark.

20.    At all material times from the late 1990's through and including mid-year 2017, J. WEINGARTEN was a full-time executive with GOOD OLD GOLD and he was charged with managing the on-line diamond business and its marketing efforts.

21.     On April 13, 2010, J. WEINGARTEN filed an application for trademark registration with the USPTO to obtain a registration of the AUGUST VINTAGE trademark.  The Company understood this to be a filing on behalf of the Company for its new brand of diamonds. *See* Exhibit C.

22.     In the application for trademark filed with the USPTO it calls for identification of the trademark owner.  In filling out this section of the application, J. WEINGARTEN had inserted, without Company knowledge, his individual name as trademark owner in place of GOOD OLD GOLD.  The application also required an address and J. WEINGARTEN inserted the address of GOOD OLD GOLD.  *See* Exhibit C.

23.     Defendant, J. WEINGARTEN, aware he was not the owner of the Mark and was not using the Mark, signed the declaration of the application as owner.  *See* Exhibit C.

24.     The application was filed by J. WEINGARTEN as an Intent to Use application, and on July 4, 2011, a use amendment was filed attaching a photograph of a diamond with the mark AUGUST VINTAGE on its edge, and the website offer to sell online AUGUST VINTAGE diamonds by GOOD OLD GOLD.  When J. WEINGARTEN signed the amendment declaration on July 1, 2011, he again signed as owner of the trademark sought to be registered.  He did not correct his status with regard to the Mark.  *See* Exhibit D.

25.     The diamond being shown as a specimen of the use of the Mark for registration belonged to GOOD OLD GOLD, was paid for by GOOD OLD GOLD, the website showing sales of diamonds with the mark was that of GOOD OLD GOLD, and the cost associated with such registration was being funded by GOOD OLD GOLD.

6

26.     On August 30, 2011, the application was issued as Registration Number 4020284 in the name of JONATHAN WEINGARTEN with the address of GOOD OLD GOLD. Defendant, J. WEINGARTEN, has not corrected the registration which issued.  *See* Exhibit E.

27.     GOOD OLD GOLD has continued to use in commerce the trademark, AUGUST VINTAGE, with its line of diamonds from 2009 continuously through the present date.  *See* composite, Exhibit B.

28.     Defendant, J. WEINGARTEN, while employed at GOOD OLD GOLD never asserted that the AUGUST VINTAGE trademark belonged to him personally.

29.     In September 2017, Defendant, J. WEINGARTEN, left the company.  He opened a business called AUGUST VINTAGE, INC., selling diamonds on-line in competition with GOOD OLD GOLD, and using the AUGUST VINTAGE trademark on its website.  *See* Exhibit F.

30.     Although GOOD OLD GOLD has demanded and hereby demands that J. WEINGARTEN and his new corporation Defendant, AVI, cease use of the trademark AUGUST VINTAGE, Defendants have refused such requests.

31.     On June 9, 2010, while a full-time employee with GOOD OLD GOLD, J. WEINGARTEN filed Patent Application No. 12/797,001 with the USPTO claiming diamonds cut which produce a specific look of light on the table facet of the diamond.  The application listed JONATHAN WEINGARTEN as the inventor.  The cost of patenting, experimenting, and time spent by J. WEINGARTEN were paid for by GOOD OLD GOLD.  The diamonds cut using the configuration under the application were paid for by GOOD OLD GOLD and all marketing efforts were paid for by GOOD OLD GOLD.  J. WEINGARTEN asserted and treated the

application as the property of GOOD OLD GOLD.  On April 29, 2014, the application issued as U.S. Patent No. 8,707,733 B2 ('733 Patent).  *See* Exhibit G.

32.      On September 30, 2014 a second patent also addressing cut of diamonds was issued in the name of J. WEINGARTEN and bearing U.S. Patent Number 8,844,319 B2 ('319 Patent).  *See* Exhibit H.  A third patent also addressing cut of diamonds was issued on September13, 2016 in name of J. WEINGARTEN and bearing U.S. Patent Number 9,439,483 B1 ('483 Patent).  *See* Exhibit I.  The cost of patenting, experimenting, and time spent by J. WEINGARTEN were paid for by GOOD OLD GOLD.  The diamonds cut using the configuration under the application were paid for by GOOD OLD GOLD and all marketing efforts were paid for by GOOD OLD GOLD.  J. WEINGARTEN asserted and treated the application as the property of GOOD OLD GOLD.  J. WEINGARTEN was compensated for his time pursuing these patents which occurred on GOOD OLD GOLD's premises, at GOOD OLD GOLD's expense and all were within the scope of his work for the Company.

33.      During the time J. WEINGARTEN was employed by the Company, the diamonds cut from these patents were GOOD OLD GOLD diamonds and marketed by J. WEINGARTEN as GOOD OLD GOLD's patented diamonds.  The marketing of these diamonds from 2009 to mid-year 2017 have been done in large part under the management of J. WEINGARTEN, with GOOD OLD GOLD paying all costs in connection with such sales efforts.  *See* composite, Exhibit B.

34.      J. WEINGARTEN represented the '733, '319 and '483 patents (collectively the "Patents-in-Suit") as a property of GOOD OLD GOLD from 2010 through his leaving the Company and it was always understood by GOOD OLD GOLD and J. WEINGARTEN that the patents would be assigned to GOOD OLD GOLD since it was part of J. WEINGARTEN's job

and in compensation for the funds expended to experiment, procure the patents, provide product and market the diamonds.

35.     Demand has been made and is hereby made for Defendant, J. WEINGARTEN, to assign the Patents-in-Suit but no assignment has been provided by Defendant, J. WEINGARTEN.

36.     Upon J. WEINGARTEN leaving the employ of GOOD OLD GOLD in September 2017, without authorization he removed and refused to return a Company computer containing trade secret information, Company software with programs such as Diacal and CAD including related files, as well as other proprietary Company information belonging to GOOD OLD GOLD.

37.     The Trade Secret information (customer contact information, purchase histories, financial data, software design files, vendor contacts and video subscribers) are independently very valuable to a person in the jewelry or diamond business, as customers often repeat purchasers.  This information has been gathered by GOOD OLD GOLD for over twenty years and is not available to anyone in the general public.  Use of such information by J. WEINGARTEN and AVI, has and will continue to cause damage to GOOD OLD GOLD.

38.     J. WEINGARTEN as an executive with GOOD OLD GOLD, knew that the data and information he took was a Trade Secret of GOOD OLD GOLD, knew he had a duty to protect it for use only by the Company, and utilized improper means to obtain the information by taking it without authority for use in his new business.  Demand has been and hereby is made to return such Trade Secret information, but it has not been returned.

39.     The trade secret information was acquired through the efforts, expense and work of GOOD OLD GOLD, and its retention by Defendants, J. WEINGARTEN and AVI, would enrich them at the expense of GOOD OLD GOLD and be unconscionable.

## AS AND FOR A FIRST CAUSE OF ACTION

## DEFEND TRADE SECRETS ACT 18 U.S.C. §1836

40.     Paragraphs 1 to 39 are re-alleged and re-averred as if set forth at length herein.

41.     GOOD OLD GOLD created and is the sole owner of its customer contact list and purchase history, video subscriber data, vendor data base, software design data files and financial data ("Trade Secret information").  This Trade Secret information was developed over more than a twenty-year period, at substantial time and tens of thousands of dollars in expense.

42.     GOOD OLD GOLD considers its customer list and history, names of subscribers to GOOD OLD GOLD videos, vendor data base, computer design data and products financial data to be proprietary trade secret information and it would be of great independent value to anyone in the diamond and jewelry business providing sources, design data, competitive costing data and potential clients for future purchases.

43.     This Trade Secret information is not known to the public or to competitors in the diamond and jewelry business and not readily ascertainable by any person using proper means.

44.     The Trade Secret information is protected by the Company keeping it secured in locked password protected computers and only allowing access by management personnel of GOOD OLD GOLD and to those in the Company who have need to know.  Further, no person was authorized to disseminate or make a copy of such information without specific authorization for anything but Company business.  Management personnel are aware of the confidential nature

of this information and the need for it to be treated as Trade Secret information by management and the Company.

45.     At mid-year 2017, J. WEINGARTEN, who was part of management, without consent or authority from the Company, upon leaving his employment with GOOD OLD GOLD, left with a Company computer containing the Company's Trade Secret information, including customer contact information, purchasing history, vendor information, financial information and computer software design data files, all of which were held and protected as Trade Secret information by GOOD OLD GOLD.

46.     When J. WEINGARTEN was intending to leave his employment with GOOD OLD GOLD, he was aware that if he took the Company's computer he would be taking Trade Secret information belonging to GOOD OLD GOLD without authorization or consent and in violation of Company policy to keep such information secret and only for Company use.

47.     Defendants have been using such information to market goods and services, to contact vendors to obtain product for sales to potential customers of GOOD OLD GOLD, to directly compete against GOOD OLD GOLD and has thereby caused damages to GOOD OLD GOLD, in an amount to be determined at trial, but in any case no less than $500,000.

## AS AND FOR A SECOND CAUSE OF ACTION

## UNFAIR COMPETITION- THE LANHAM ACT, 15 U.S.C. §1125(a)

48.     Paragraphs 1 to 47 are re-alleged and re-averred as if set forth at length herein.

49.     The Mark, AUGUST VINTAGE, has been used by GOOD OLD GOLD as a trademark for certain diamonds indicating the source for such diamonds which was GOOD OLD GOLD.  Without consent of GOOD OLD GOLD, Defendant, J. WEINGARTEN, while an employee of GOOD OLD GOLD and manager of the marketing efforts for GOOD OLD GOLD

in the diamond portion of the business, did incorporate the entity AUGUST VINTAGE INC., and upon leaving employment with GOOD OLD GOLD started using the trademark AUGUST VINTAGE in identical form, for identical goods, in the same channels of trade, for goods he began selling through his company Defendant, AVI.

50.     The selling of diamonds using the AUGUST VINTAGE trademark by Defendants has caused confusion and deceives purchasers into believing there is a relationship between Defendants and GOOD OLD GOLD, creating unfair competition between the parties by allowing Defendants to benefit from GOOD OLD GOLD's trademark, goodwill and reputation.

51.     The use of the AUGUST VINTAGE mark by Defendants have caused vendors to believe that there is a connection between the two companies and a relationship between GOOD OLD GOLD and J. WEINGARTEN.  This has resulted in at least one vendor requesting GOOD OLD GOLD pay an invoice overdue by Defendants.

52.     The AUGUST VINTAGE trademark was improperly and without permission used by Defendant, J. WEINGARTEN, and Defendant, AVI, fraudulently misrepresenting to the public who was the owner of the Mark and the source of the goods.

53.     The address used for owner under Registration No. 4020284 for AUGUST VINTAGE belongs to GOOD OLD GOLD and, at the time the application was filed at the Trademark Office, April 13, 2010 through the date of issuance of the registration August 30, 2011, J. WEINGARTEN was a full-time employee of GOOD OLD GOLD.

54.     The fraudulent acquisition of the trademark AUGUST VINTAGE and use by the Defendants after September 7, 2017 has damaged GOOD OLD GOLD, in an amount to be determined at trial, but in any case no less than $500,000.

55. Demand has been made for Defendants to stop further use of the Mark but Defendants have refused such request.

## AS AND FOR A THIRD CAUSE OF ACTION

## TRADEMARK INFRINGEMENT - THE LANHAM ACT, 15 U.S.C. §1114(1)

56. Paragraphs 1 to 55 are re-alleged and re-averred as if set forth at length herein.

57. GOOD OLD GOLD has used the trademark, AUGUST VINTAGE, to brand a source of certain cut diamonds.

58. The mark, AUGUST VINTAGE, is an arbitrary mark having no relationship, meaning, or description related to diamonds. As an arbitrary mark, it is the strongest of marks.

59. GOOD OLD GOLD started using the mark, AUGUST VINTAGE as early as 2009 on its website.

60. GOOD OLD GOLD directed the manager and executive handling the on-line diamond business, Defendant, J. WEINGARTEN, to take all necessary actions to protect the Mark on the company's behalf, including handling application for trademark registration of the Mark.

61. The Company paid the costs of registration of the Mark and time of Defendant, J. WEINGARTEN, to obtain the registration, believing that J. WEINGARTEN was acting on behalf of and in the best interests of the Company to protect Company property.

62. The application documents filed with the USPTO indicate a first use and use in commerce of the Mark to be June 2009, and an address for the owner which is the address of GOOD OLD GOLD. However, the name of the mark owner did not indicate GOOD OLD GOLD, but in place thereof was the name of Defendant, J. WEINGARTEN. *See* Exhibits C and D.

63.     The application signed by J. WEINGARTEN states in its declaration that the person signing the application believes the applicant is the owner of the trademark sought to be registered.   This was false as J. WEINGARTEN knew the mark belonged to GOOD OLD GOLD.   Defendant, J. WEINGARTEN, was not in business at that time, was a full-time employee of GOOD OLD GOLD, was not purchasing any diamond products for sale with the AUGUST VINTAGE Mark, and knew that it was GOOD OLD GOLD who was the party selling product in commerce with the AUGUST VINTAGE mark.  *See* Exhibits B, C and D.

64.     The application for the mark issued into a registration on the Principal Register on August 30, 2011, being Registration No. 4020284, using the address of GOOD OLD GOLD but  having the name of JONATHAN WEINGARTEN as owner.  *See* Exhibit E.

65.     The registration as it stands is fraudulent with the owner's name indicating J. WEINGARTEN and the registration should be corrected to reflect the name of the true registrant (owner) *nunc pro tunc*, that of GOOD OLD GOLD INC.

66.     GOOD OLD GOLD, not being aware that the name for the Mark was put under the name of J. WEINGARTEN, proceed to utilize the Mark in commerce, to sell the diamonds, promote the Mark, utilize the symbol for registration with the Mark and spend tens of thousands of dollars in marketing connected with the Mark, continuously from 2009 through the present. *See* composite, Exhibit B.

67.     Plaintiff as the true registrant (owner) of the Mark requests that the USPTO be directed to correct the registration to indicate that the correct owner of the mark is the Plaintiff, pursuant to 15 U.S.C. §1119.

68.     The use of the identical mark by Defendants is intentional, likely to cause confusion and has caused confusion with the public. Defendants are selling and offering for sale

goods using a mark that infringes upon the GOOD OLD GOLD's registered trademark, AUGUST VINTAGE.

69.     Plaintiff has been damaged by the intentional infringement by the Defendants, in an amount to be determined at trial, but in any case no less than $500,000.


### AS AND FOR A FOURTH CAUSE OF ACTION

### OWNERSHIP OF U.S. PATENT NOS. 8,707,833 B2; 8,844,319 B2 AND 9,439,483, AND SHOP RIGHTS

70.     Paragraph 1 to 69 are re-alleged and re-averred as if set forth at length herein.

71.     Defendant, J. WEINGARTEN, was given the task to create marketing ideas, plans and materials, and devote substantial time to the creation of educational videos, as well as explore any other ideas which would create diamonds specifically for GOOD OLD GOLD.

72.     In 2008 through 2009, after spending innumerable Company hours of effort, J. WEINGARTEN came up with an approach for cutting the facets of a diamond such as to create a desired pattern to be seen on the tablet facet of the diamond.  This development was patented by GOOD OLD GOLD and believed to be owned by GOOD OLD GOLD, but as required by the patent statute, the application was initially put in the name of the inventor Defendant, J. WEINGARTEN.  It was expected by the Company to inure to and be assigned to, the benefit of and be the property of GOOD OLD GOLD.  The first patent, filed on June 9, 2010, U.S. 8,707,733 B2 (the '733 patent), issued on April 29, 2014.  *See* Exhibit G.

73.     Defendant, J. WEINGARTEN, never assigned the '733 patent to GOOD OLD GOLD and though he was obligated to have assigned the patent since it was part of his job tasks, was paid for by GOOD OLD GOLD, was done on Company time, and was marketed as a GOOD

OLD GOLD property and that was the understanding between the Company and J. WEINGARTEN.

74.     The second patent application filed on January 14, 2011 also results in another pattern to be seen on the tablet facet of the diamond.  This development was patented by GOOD OLD GOLD and was believed to be owned by GOOD OLD GOLD, but as required by the patent statute, the application was initially put in the name of the inventor Defendant, J. WEINGARTEN.  It was expected by the Company to inure to and be assigned to, the benefit of and be the property of GOOD OLD GOLD.  This patent, U.S. Patent No. 8,844,319 B2 (the '319 patent), issued on September 30, 2014.  *See* Exhibit H.

75.     Defendant, J. WEINGARTEN, never assigned the '319 patent to GOOD OLD GOLD although he was obligated to have assigned the patent since it was part of his job tasks, was paid for by GOOD OLD GOLD, was done on Company time, and was marketed as a GOOD OLD GOLD property and that was the understanding between the Company and J. WEINGARTEN.

76.     The third patent application was filed on April 28, 2014 which results in better reflection on the tablet facet of the diamond.  This development was patented by GOOD OLD GOLD and believed to be owned by GOOD OLD GOLD, but as required by the patent statute, the application was initially put in the name of the inventor Defendant, J. WEINGARTEN.  It was expected by the Company to inure to the benefit of and be the property of GOOD OLD GOLD.  This patent, U.S. Patent No. 9,439,483 B1 (the '483 patent), issued on September 13, 2016.  *See* Exhibit I.

77.     Defendant, J. WEINGARTEN, never assigned the '483 patent to GOG and though he was obligated to have assigned the patent since it was part of his job tasks, was paid

16

for by GOOD OLD GOLD, was done on Company time, and was marketed as a GOOD OLD GOLD property and that was the understanding between the Company and J. WEINGARTEN.

78.      Based on the implied-in-fact contract that existed between GOOD OLD GOLD and J. WEINGARTEN, the fact that GOOD OLD GOLD fulfilled all its obligations and that J. WEINGARTEN was performing his assigned tasks, the Patents-in-Suit rightfully should be the property of GOOD OLD GOLD and Defendant, J. WEINGARTEN, ordered to assign the Patents to the Company.

79.      Demand has been made to Defendant, J. WEINGARTEN, to assign the Patents-in-Suit but it has been refused.

80.      Plaintiff has been damaged by Defendants in an amount to be determined at trial.

81.      Based upon the facts that the Company provided its facilities, employee time and funds to develop the idea and prepare numerous attempts to achieve the desired results, pay for patenting and marketing of the finished goods, GOOD OLD GOLD has, in the alternative, if assignment of the Patents is not granted, acquired at minimum a Shop Right with regards to the Patents-in-Suit and should be granted such rights.

<u>**AS AND FOR A FIFTH CAUSE OF ACTION**</u>

<u>**COMMON LAW BREACH OF EMPLOYEE FIDUCIARY DUTY**</u>

82.      Paragraphs 1 to 81 are re-alleged and re-averred as if set forth at length herein.

83.      The Defendant, J. WEINGARTEN, was employed by GOOD OLD GOLD for over twenty years, was a trusted manager and executive of the Company.

84.      That Defendant, J. WEINGARTEN, did create Defendant, AVI, in 2015 without the knowledge of the Company, on information and belief, to compete with GOOD OLD GOLD,

and that during the last year of his employment period was using Company resources and information, and secretly planning and organizing a competing business.

85. The business of Defendant, AVI, on information and belief fully owned by J. WEINGARTEN, directly competes with the business of GOOD OLD GOLD, by selling diamonds and jewelry in competition with virtually identical type pieces of jewelry and diamonds using the trademark AUGUST VINTAGE which GOOD OLD GOLD owns and spent at least nine (9) years marketing and developing goodwill associated with such Mark. *See* composite, Exhibit B.

86. That as a result of these actions by J. WEINGARTEN, GOOD OLD GOLD has been damaged by virtue of the compensation paid to J. WEINGARTEN while employed during this period as well as such other and additional damages as determined at trial.

## AS AND FOR A SIXTH CAUSE OF ACTION

## COMMON LAW TRADEMARK INFRINGEMENT

87. Paragraphs 1 to 86 are re-alleged and re-averred as if set forth at length herein.

88. The Defendants have utilized the Plaintiff's mark, AUGUST VINTAGE, identically, for the identical goods, and selling goods using the same methods of sale through the internet, such that any search of the Mark will result in Defendants' website being appearing as a source of goods that may come from Plaintiff.

89. Knowing of Plaintiff's use of the identical mark for the same goods for the past eight years, indicates intentional bad faith of Defendants in using the Mark.

90. Plaintiff has been damaged in an amount to be determined at trial by the actions of Defendants in using the Plaintiff's Mark, but in any case no less than $500,000.

## AS AND FOR A SEVENTH CAUSE OF ACTION

## COMMON LAW UNJUST ENRICHMENT

91.     Paragraphs 1 to 90 are re-alleged and re-averred as if set forth at length herein.

92.     Pleading in the alternative, in the event that an implied contract is not found, as alleged in the prior causes of action, the Defendants initiated their business utilizing the trademark of PLAINTIFF "AUGUST VINTAGE", without authorization, which PLAINTIFF has spent over nine (9) years promoting and marketing to create a brand strongly associated with GOOD OLD GOLD.

93.     Defendants utilized information, without authorization, kept confidential as a trade secret by PLAINTIFF, acquired over 20 years, at great expense to PLAINTIFF, thereby allowing Defendants to not have to make the investment and spend time to create market awareness of such Mark and create customer information database, design database, vender contacts and financial data base.  Defendants' taking of this information has unjustly enriched Defendants at the cost of PLAINTIFF.

94.     It would be against equity and good conscience to permit the Defendants to retain the Mark and trade secret information.

95.     As a result of Defendants' actions, PLAINTIFF has been damaged, in an amount to be determined at trial, but in any case no less than $500,000.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

## COMMON LAW CONVERSION

96.     Paragraphs 1 to 95 are re-alleged and re-averred as if set forth at length herein.

97.     Defendants J. WEINGARTEN and AVI have intentionally taken the computer belonging to Plaintiff, GOOD OLD GOLD, together with Trade Secrets, computer programs and

19

business data of GOOD OLD GOLD residing on that computer, or placed on other media by Defendants, which is owned by GOOD OLD GOLD.

98. The taking of the computer, Trade Secrets, and computer programs and business data (the "Property") was done without authority, intentionally knowing that it was being taken against Company policy, and taken for use in establishing and assisting Defendants to compete against Plaintiff.

99. The Plaintiff had demanded the return of the computer and business data, however, Defendants have refused to return the Property and on information and belief continue keeping it as their own, and using it.

100. The taking and use of the Property has resulted in damage to the Plaintiff, in an amount to be determined at trial, but in any case no less than $500,000.

## AS AND FOR A NINTH CAUSE OF ACTION

## INJUNCTIVE RELIEF

101. Paragraphs 1 to 100 are re-alleged and re-averred as if set forth at length herein.

102. Plaintiff requests a preliminary injunction and permanent injunction as the continued actions by the Defendant has and continues to incur damages to its goodwill and reputation, as there is no adequate remedy at law.

103. Injunctive relief is available under 18 U.S.C. 1836(3), 15 U.S.C. 1116, 15 U.S.C. 1125(a), as well as in accordance with principles of equity and upon such terms as the court may deem reasonable.

104. The Plaintiff has a valid mark under 15 U.S.C. 1114(1) as the true registrant of a registered mark, with the correcting of registration pursuant to 15 U.S.C. §1119. It is a valid mark pursuant to 15 U.S.S. §1125(a)(1) as the mark is a strong, arbitrary distinctive mark.

105.     The Defendants have unlawfully taken and used the Mark in virtually identical form for the same type of goods as sold by Plaintiff, using the same commercial channels for selling the goods.

106.     The use of the AUGUST VINTAGE mark by the Defendants without consent or license by the Plaintiff is a direct infringement of the Mark, creating a substantial likelihood of confusion with Plaintiff's Mark, or that there is an affiliation or connection between the Plaintiff and Defendants.  Since the Marks are virtually identical, confusion is probable.

107.     The Plaintiff's goodwill and reputation will be irreparably harmed as consumers/purchasers of product will be misled in their purchases, believing they are dealing with GOOD OLD GOLD when they are not.

108.     The Defendant Trade Secrets Act at 18 U.S.C. 1836(3) provides injunctive relief to protect trade secrets of plaintiff.

109.     The trade secrets of plaintiff being protected by for decades is protectable by injunction and appropriate order of the court to preserve such trade secret information.

110.     Granting of injunctive relief would restore the trademark and Trade Secret information to its rightful owner, stop improper use, and present no burden or harm on Defendants.

111.     The public has a right not to be deceived or confused.  The costs of diamonds are significant to most purchasers and they rely upon the goodwill, reputation and veracity of the Plaintiff in making such purchases.  There is a substantial likelihood of consumer confusion, which if allowed, would damage the public interest.

112.     The Plaintiff is entitled to injunctive relief to protect its trademark and goodwill and reputation associated therewith.

21

113.    The Trade Secrets of Plaintiff represent decades of time, cost and effort to establish a database to permit Plaintiff to compete in the diamond and jewelry business and to service its clients.  That information was unlawfully taken and being used by Defendants.

114.    The Plaintiff is entitled to injunctive relief to protect its Trade Secret information and have it returned to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, it is specifically requested that this Court grant Plaintiff judgment, as follows:

(a)    Injunction Relief ordering Defendants to stop utilizing the AUGUST VINTAGE mark and return to GOOD OLD GOLD its computer and Trade Secret and business data and any other information of GOOD OLD GOLD, pursuant to 15 U.S.C. §1114(1), §1125(a)(1) and 18 U.S.C. 1836(3); destruction of all records, electronic records, or copies made of such business data held by Defendants and all goods containing the Mark pursuant to 15 USC 1118;

(b)    Order assignment of the Patents-in-Suit to GOOD OLD GOLD; or in the alternative grant Shop Rights to GOOD OLD GOLD to the Patents-in-Suit;

(c)    Direct the USPTO to correct the registration of AUGUST VINTAGE to reflect the owner as GOOD OLD GOLD, nunc pro tunc, pursuant to 15 USC 1119; in the alternative to order J. WEINGARTEN to assign the Trademark Registration of AUGUST VINTAGE to GOOD OLD GOLD; or in the alternative order cancellation as such registration as fraudulent;

(d)    Damages to be determined at trial incurred by Plaintiff and disgorgement of profit earned by Defendants be granted to Plaintiff, but in any case no less than $500,000; in the alternative, statutory damages pursuant to 15 U.S.C. §1125(a), §1114(1), §1117, §1120 and 18 U.S.C. 1836(3).

(e)     Damages to be determined at trial for employee compensation paid to Defendant,

J. WEINGARTEN;

(f)     Declare the case exceptional, the conduct willful and award exemplary damages

under 15  U.S.C. §1117, and exemplary damages under 18 U.S.C. §1836(3)(c);

(g)     Reasonable attorney fees pursuant to 15 U.S.C. §1117(a), §1117(b) and 18 U.S.C.

§1836(3)(B);

(h)     Costs and pre- and post-judgment interest;

(i)     Such other relief as this Court deems equitable, proper and just.

## JURY DEMAND

Demand is made for jury trial of all issues triable by jury pursuant to F.R.C.P. Rule 38.


Dated:  Syosset, New York
        August 15, 2018

Respectfully submitted,

By:

John N. Tasolides, Esq.
6800 Jericho Turnpike, Suite 104W
Syosset, New York 11791
Tel:  516-682-8220
jnt@tasolaw.com
Robert E. Pershes, Esq.
PERKINS PERSHES, PLLC
3839 N.W. Boca Raton Blvd., Suite 200
Boca Raton, Florida 33431
Tel: (561) 910-8923
Fax: (561) 423-3989
rpershes@perkinspershes.com
*Attorneys for Plaintiff, Good Old Gold*